## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RICHMOND MAIN, LLC,
A Michigan Limited Liability Company

             Hon. Denise Page Hood

   Plaintiff,

             Civil Action No. 2:24-cv-12106

vs.

FRENCHTOWN SQUARE PARTNERSHIP,
An Ohio General Partnership

   Defendant.

                      /

| | |
|---|---|
| PHILLIP A. GREENBLATT, PLLC | PHILIP A. COSTELLO, PLLC |
| Phillip A. Greenblatt (P54170) | Philip A. Costello (P36075) |
| Attorney for Plaintiff | Attorney for Defendant |
| P.O. Box 4270 | 111 S. Macomb Street |
| Southfield, Michigan 48037 | Monroe, Michigan 48161 |
| (248) 227-7350 | (734) 241-8300 |
| phil@phillipagreenblattpllc.com | pacostello@brblaw.net |

                      /

## MOTION FOR JUDGMENT ON THE PLEADINGS

   Now comes Defendant Frenchtown Square Partnership (hereinafter "Defendant") and respectfully moves this honorable Court for a judgment on the pleadings pursuant to Fed. R. of Civ. Pro. 12(c) against Plaintiff Richmond Main, LLC (hereinafter "Plaintiff"). Defendant hereby requests a judgment dismissing all claims brought by Plaintiff on the grounds that Plaintiff was barred from bringing this lawsuit, or in the alternative, that Plaintiff failed to state a claim for which relief

can be granted. Accordingly, Defendant is entitled to judgment as a matter of law against Plaintiff for the reasons detailed in the accompanying Brief.

Respectfully Submitted,

Dated: January 28, 2025

/s/ Philip A. Costello
Philip A. Costello (P36075)
Attorney for Defendant
111 S. Macomb Street
Monroe, Michigan 48161
(734) 241-8300
pacostello@brblaw.net

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE**

**PLEADINGS:**

**ISSUES PRESENTED**

On May 12, 2021, Plaintiff Richmond Main, LLC (hereinafter "Plaintiff") entered into an Assignment and Assumption of Operating and Easement Agreement (hereinafter "Assignment") that required Plaintiff to, amongst other obligations, make monthly common area maintenance payments to Defendant Frenchtown Square Partnership (hereinafter "Defendant"), which Plaintiff did not tender. In January of 2022, Defendant sought judicial enforcement of the Operating and Easement Agreement (hereinafter "OEA") ECF No. 14-1, PageID. 132-220, but before a final decision from the court, the parties entered into a Settlement Agreement ECF No. 14-1, PageID.237-246, where Plaintiff promised to pay delinquent and future common area maintenance fees; complete various repairs to its real property as required by the OEA including, but not limited to, the complete replacement of the parking lot located on Plaintiff's tract; and released Defendant of any and all claims before the effective date of the Settlement Agreement.

Despite being contractually barred from suing Defendant on any claims available at the time of the Settlement Agreement, Plaintiff now brings this lawsuit, erroneously alleging that the settlement was obtained as a result of Defendant's fraudulent misrepresentation that the OEA was still effective, among other

i

unsubstantiated accusations. This Court must now decide whether Plaintiff is contractually barred from further litigating this action. If the Court decides Plaintiff is not barred, then this Court must decide, based upon the allegations in Plaintiff's Complaint, (1) whether Plaintiff adequately stated a claim against Defendant for fraud by misrepresentation, statutory conversion, and unjust enrichment; and (2) whether Plaintiff has any legal basis for declaratory reliefs, quiet title, and constructive trust.

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE**

**PLEADINGS:**

**TABLE OF AUTHORITIES**

## Cases

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450 (6th Cir. 2001) ......7

*Amini v. Oberlin Coll.*, 259 F.3d 493 (6th Cir. 2001).................................................7

*Arabo v. Mich. Gaming Control Bd.*, 872 N.W.2d 223 (Mich. Ct. App. 2015)......17

*Arndt v. Vos*, 268 N.W.2d 693 (Mich. Ct. App. 1978)............................................19

*Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008)..........................................7

*Bellevue Ventures, Inc. v. Morang-Kelly Inv.*, 836 N.W.2d 898 (Mich. Ct. App. 2013) ...............................................................................................................15

*Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 600 N.W.2d 698 (Mich. Ct. App. 1999)...............................................19

*Candler v. Heigho*, 175 N.W. 141 (Mich. 1919)....................................................13

*Cannon v. Wells Fargo Bank, N.A.*, 917 F.Supp. 2d 1025 (N.D. Cal. 2013) ..........20

*Cnty. of Ingham v. Mich. Cnty. Rd. Comm'n Self-Insurance Pool*, No. 334077, 2022 Mich. App. LEXIS 4081 (Mich. Ct. App. July 14, 2022) ..........................14

*Dombrowski v. City of Omer*, 502 N.W.2d 707 (Mich. Ct. App. 1993)...................8

*Engler v. Arnold*, 862 F.3d 571 (6th. Cir. 2017).......................................................7

*Hudson v. Mathers*, 770 N.W.2d 883 (Mich. Ct. App. 2009) ................................15

*JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577 (6th Cir. 2007)....................7

*Kammer Asphalt Paving Co. v. East China Twp. Sch.*, 504 N.W.2d 635 (Mich. 1993) ................................................................................................................20

*Lawsuit Fin, LLC v. Curry*, 683 N.W.2d 233 (Mich. Ct. App. 2004) .....................15

*Liggett Rest. Group, Inc. v. City of Pontiac*, 676 N.W.2d 633 (Mich. Ct. App. 2003) ...............................................................................................................15

*Magley v. M&W Inc.*, 926 N.W.2d 1 (Mich. Ct. App. 2018) ....................................14

*Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233 (6th Cir. 1991) ..7

*Reicher v. S.E.T. Enters.*, 770 N.W.2d 902 (Mich. Ct. App. 2009) ..........................8

*Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895 (6th Cir. 2002)................7

*Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001)............................7

*U.S. Fidelity & Guaranty Co. v. Black*, 313 N.W.2d 77 (Mich. 1981) ........... 13, 16

*Wade v. Dep't of Corr.*, 483 N.W.2d 26 (Mich. 1992)............................................17

*Zine v. Chrysler Corp.*, 600 N.W.2d 384 (Mich. Ct. App. 1999)............................16

**Statutes**

Mich. Comp. Laws § 600.2919a................................................................................14

Mich. Comp. Laws § 600.2932..................................................................................18

**Rules**

Fed. R. Civ. Pro. 12(c) ...............................................................................................6

# TABLE OF CONTENTS

## BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

I.    **Facts.**                                                        Page 1.

    A. Plaintiff is actively required to make payments to
       Defendant under relevant provisions of the Operating
       and Easement Agreement.                              Page 1.

    B. Plaintiff agreed to a Settlement Agreement in which,
       amongst other terms, Plaintiff waived and released
       Defendant from the claims Plaintiff attempts to bring in
       this lawsuit.                                        Page 4.

    C. Plaintiff sued Defendant based on the improper
       contention that Defendant defrauded Plaintiff, resulting
       in alleged statutory conversion and unjust enrichment.   Page 5.

II.   **Law and Analysis.**                                             Page 6.

    A. Plaintiff is barred from recovery in this lawsuit because
       Plaintiff expressly waived its alleged claims and released
       Defendant from liability in the Settlement Agreement.    Page 8.

    B. Plaintiff has failed to establish any claim for which relief
       can be granted due to Plaintiff's reliance on erroneous
       allegations.                                         Page 9.

        i.    Plaintiff cannot establish any claims against
           Defendant on the basis of Defendant mis-
           represented the effectiveness of the OEA because
           the OEA remains in full force and effect.        Page 10.

        ii    Plaintiff cannot establish any claims against
           Defendant with any remaining allegations due to
           irrelevance and inaccuracy.                      Page 16.

C. Plaintiff has failed to establish that it is entitled to any equitable remedies because there are no successful claims against Defendant for which relief can be granted.                                            Page 17.


**III.   Conclusion.**                                            Page 20.

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE**

**PLEADINGS**

## I.    FACTS

In August 1994, Defendant Frenchtown Square Partnership (hereinafter "Defendant") and Dayton Hudson Corporation (hereinafter "Target") entered into an Operation and Easement Agreement ("OEA") ECF No. 14-1 Page ID.135-213, enumerating each party's rights and responsibilities regarding their respective tracts of land that functioned contiguous and adjacent to one another, operating together as a single shopping complex. (Pl.'s Compl. ¶ 5; Def.'s Answer ¶ 5; Pl.'s Compl. Ex. 3) In May 2021, Plaintiff Richmond Main, LLC (hereinafter "Plaintiff") purchased and acquired all of Target's interest in Target's tract of the shopping complex. ECF No. 14-1 Page ID. 215-220, (Pl.'s Compl. Ex. 4, 5.) Plaintiff subsequently signed an Assignment and Assumption of Operation and Easement Agreement ECF No. 14-1, PageID.220-226, (hereinafter "Assignment"), where Plaintiff accepted all of the assignments of Target's OEA. (Pl.'s Compl. ¶ 40; Def.'s Answer ¶ 40; Pl.'s Compl. Ex. 6).

### A. Plaintiff is actively required to make payments to Defendant under relevant provisions of the Operating and Easement Agreement.

Article 4.2(C) of the OEA, ECF No. 14-1, PageID.158-161, states that Plaintiff must "pay to [Defendant] an annual Common Area Maintenance charge ("CAM charge") … in equal monthly installments *during the term of the OEA* …."

(Pl.'s Compl. Ex. 3 at 21-22 emphasis added). The CAM charge is calculated per square foot of floor area of Plaintiff's tract, with an annual adjustment according to the Consumer Price Index. ECF No. 14-1, PageID.157-162. (Pl.'s Compl. Ex. 3 at 21-22). There are no occurrences listed under Article 4.2(C) that would effectuate the termination of Plaintiff's obligation to pay CAM charges.

CAM charges are due during the entire term of the OEA, and the OEA term is still in full force and effect. ECF No. 14-1, PageID.184-185.  Article 7.1 is titled "Term of this OEA" and reads, in relevant part,

> *This OEA* shall be effective as of the date first above written and shall terminate on the expiration of six (6) months following notice of termination by one of the Parties then in interest to the other Party then in interest given at any time after the expiration of the fifty (50) year period following the date hereof; however, that the easements referred to in Article II hereof which are specified as being perpetual or as continuing beyond the term of this OEA shall continue in force and effect as provided therein. (emphasis added).

Thus, the term of the OEA will not expire until six months after notice from one of the parties of interest of its desire to terminate the OEA. Pl.'s Compl. Ex. 3 at 47. Yet, such notice can only be given after fifty years from the commencement of the OEA term, making the earliest possible date the entire OEA can be terminated sometime in the year 2045. Pl.'s Compl. Ex. 3 at 47. There are no other provisions in the OEA that allow the termination of the OEA in its entirety. *See generally* Pl.'s Compl. Ex. 3.

The remaining references to termination in the OEA are limited to the termination of two specific covenants in the OEA. These items have no bearing on the remainder of the OEA. For example, Article 5.1(A) is titled "Developer's Operating Covenant" ECF No. 14-1, Page ID.163, and reads, in its entirety,

> Developer covenants with Target, for a period of ten (10) years following Target's initial opening for business and for so long thereafter as two (2) or more Major Store Buildings are being operated as single retail stores, Developer shall continuously operate the enclosed mall and at least sixty (60%) or more of the Floor Area of the Mall Store Buildings, with reasonably even distribution thereof throughout the enclosed mall, in a manner consistent with best standards of reasonable shopping center practices. Notwithstanding the foregoing, *this operating covenant* shall terminate as to Target at such time as Target permanently ceases to be open for business to the public.

Pl.'s Compl. Ex. 3 at 26 (emphasis added). In short, Article 5.1(A) requires Defendant to operate the mall and 60% of its floor area for ten years with even distribution and high standards, but should Target permanently close its doors, "this operating covenant" would terminate. Pl.'s Compl. Ex. 3 at 26.

Next, Article 5.1(B) is titled "Target's Operating Covenant" ECF No. 14-1, Page ID.164, and reads, in relevant part,

> Target covenants with Developer that it will use its best efforts to open its store in the Target Building, and its entrance to the enclosed mall (which shall be and remain open during Tenant's Operating Covenant a minimum of thirty (30) feet in width), on or before August 1, 1994 and that Target will thereafter, for a period of ten (10) years from the date that Target first opens for business in the Target Building , operate or cause to be operated in the Target Building: During the first five (5) year period after the date Target first opens, a department store under the trade name of 'Target' or such other trade name as is now being

used or as may hereafter be used at the time in question by a majority of its stores of like type in the States of Michigan and Ohio; and during the next five (5) year period, a department store. Target shall be released from *its operating covenant as set forth above* in the event at any time following Target's initial opening for business less than seventy-five percent (75%) of the Mall Store Buildings shall be operating as mall stores, with reasonably even distribution thereof throughout the enclosed mall; provided, however, Developer shall have six (6) months after receipt of written notice from Target within which to cure such deficiency *before such release shall be effective*. (emphasis added).

To summarize, Article 5.1(B) required Target to open by a certain date and operate as a department store for a ten-year period, but should Defendant fail to keep the shopping complex at 75% or higher capacity *and* fail to cure the deficiency within six months of Target providing notice, the "operating covenant as set forth" would terminate. Pl.'s Compl. Ex. 3 at 27. Together, these two provisions merely allow for an exemption from the performance of these individual ten-year operating covenants contained in the OEA.[1]

### B.   Plaintiff agreed to a Settlement Agreement in which, amongst other terms, Plaintiff waived and released Defendant of the claims Plaintiff attempts to bring in this Lawsuit.

In January 2022, Defendant filed a lawsuit against Plaintiff in the Trumbull County Court of Pleas, an Ohio state court, due to Plaintiff's failure to pay the CAM charges as required under the OEA and Assignment. ECF No 14-1, PageID.228-235,

---

[1] Again, the OEA included a fifty-year term. The ten-year term of the covenants was intentional to treat the parties' limited promises to operate their business differently than the remainder of the responsibilities and obligations set forth in the OEA.

Pl.'s Compl. Ex. 8. When this lawsuit commenced, an issue of personal jurisdiction arose pertaining to whether Plaintiff could be subject to jurisdiction in Ohio. Pl.'s Compl. ¶ 21; Pl.'s Compl. Ex. 7. Ultimately, the Ohio judge ruled that the court could exercise personal jurisdiction over Plaintiff because both statutory and common law indicated that Plaintiff was "'transacting business' in Ohio." ECF No. 14-1, PageID.234, Pl.'s Compl. ¶ 24; Def.'s Answer ¶ 5[sic]; Pl.'s Compl. Ex. 7. After this judgment, Plaintiff and Defendant resolved the lawsuit through a Settlement Agreement executed in January 2023. ECF No. 14-1, PageID.237-246. (Pl.'s Compl. ¶ 27; Def.'s Answer ¶ 27). Under the Settlement Agreement, signed by both parties to this case, Plaintiff agreed to pay Defendant $138,501.00 in outstanding CAM charges; to continue paying future CAM charges according to the OEA; complete various repairs to its real property, including the replacement of the parking lot on its parcel; and specifically released Defendant, ECF No. 14-1, Page ID.240, of any and all past, present, and future claims pertaining to the OEA from the beginning of time to the time the Settlement Agreement became effective. (Pl.'s Compl. Ex. 8 ¶¶ 2, 3, 9.)

### C. Plaintiff sued Defendant based on the improper contention that Defendant defrauded Plaintiff, resulting in alleged statutory conversion and unjust enrichment.

Instead of honoring the terms of the Settlement Agreement (i.e. the payment of CAM charges and the performance of various repairs to its real property) Plaintiff

brought this lawsuit against Defendant in an attempt to avoid its obligations under the OEA, Assignment, and Settlement Agreement. *See* Pl.'s Compl. While Plaintiff's Complaint is extremely verbose and unorganized, Plaintiff only asserts three actual claims against Defendant (Counts Two, Three, and Five) and the remaining counts (Counts One, Four, Six, Seven, Eight, and Nine) relate to equitable reliefs sought for the three actual claims. *See* Pl.'s Compl. Plaintiff has accused Defendant of fraud, statutory conversion, and unjust enrichment. Pl.'s Compl. ¶¶ 66-77, 82-84. Additionally, Plaintiff asserts that it is entitled to various declaratory reliefs, quiet title in real property, and constructive trust as a result of Defendant's alleged fraud, conversion, and unjust enrichment. (Pl.'s Compl. ¶¶ 55-62, 78-81, 85-100.) Each of these assertions rely upon the Plaintiff's basic premise that Paragraph 5.1 of the OEA terminated all of Target's obligations under the OEA, and hence, relieves Plaintiff from any further obligation to Defendant.  Now, Defendant respectfully requests that this honorable Court grant Defendant's Motion for Judgment on the Pleadings against Plaintiff as a matter of law.

## II.    LAW & ANALYSIS

A party may move for judgment on the pleadings after the pleading stage of the action has concluded. Fed. R. Civ. Pro. 12(c). While the Court will typically only consider the pleadings of the case under a Rule 12(c) Motion, it can also look to "matters of public record, orders, items appearing in the record of the case, and

exhibits attached to the complaint." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008), quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). Under a Rule 12(c) Motion, the court must take "all-well pleaded material allegations of the pleadings of the opposing party" as true, and grant the motion when 'there is "'no material issue of fact' … and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007), quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991). If the opposing party's pleadings fail to state a claim to relief that is plausible on its face using "sufficient factual matter" the Rule 12(c) Motion should be granted. *Engler v. Arnold*, 862 F.3d 571, 575 (6th. Cir. 2017). Therefore, "legal conclusions or unwarranted factual inferences" should not be accepted as true. *JPMorgan Chase Bank*, 510 F.3d at 581-82. For the reasons enumerated below, Plaintiff has not successfully pled that it is entitled to relief under any of the claims it has alleged against Defendant, nor any equitable relief because the undisputed facts of the case do not create any plausible causes of action under Michigan law.[2]

---

[2] Federal law will govern the procedural aspects of a case regardless of the basis for the federal court's jurisdiction. *Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 901 (6th Cir. 2002) (stating that "in federal court, federal procedural rules must be applied …."). However, when a federal court decides a diversity jurisdiction action, substantive issues of law will be governed by the law of the state where the federal court is geographically located, so long as the law does not contravene federal interests. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508-509 (2001); *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). This case has been properly removed to this Court based on diversity jurisdiction; therefore, Michigan state law will apply to the discussion of Plaintiff's causes of action.

**A.      Plaintiff is barred from recovery in this lawsuit because Plaintiff expressly waived its alleged claims and released Defendant from liability in the Settlement Agreement.**

Any claims that could have been brought against Defendant from the beginning of time to January 2023 are now barred from being litigated due to Plaintiff signing the Settlement Agreement. ECF No. 14-1, PageID.237-246. Plaintiff voluntarily and knowingly agreed to the Settlement Agreement, which contains mutual waiver and release clauses, under the advice of its former counsel. Settlement agreements are viewed as binding contracts under the law and when the terms of such a contract are clear and unambiguous, the terms should be enforced by the court. *Reicher v. S.E.T. Enters.*, 770 N.W.2d 902, 907 (Mich. Ct. App. 2009). Waiver and release clauses contained in contracts are valid, so long as they are entered into fairly by all parties. *Dombrowski v. City of Omer*, 502 N.W.2d 707, 709 (Mich. Ct. App. 1993).

In this case, the Settlement Agreement was executed between Plaintiff and Defendant in January 2023, and included this waiver and release language in Clause 9:

> Richmond Main hereby releases and forever discharges Frenchtown, its employees, agents, successors, and assigns, from any and all claims, demands, damages, actions, and causes of action of any kind or nature whatsoever, whether said claims are known or unknown, contingent, or liquidated, from the beginning of time to the effective date of this Agreement.

ECF No. 14-1, PageID.240-241. (Pl.'s Compl. Ex. 8 ¶ 9.) The Settlement Agreement and this clause are valid and enforceable against Plaintiff, as there is no evidence that the waiver and release clause is invalid. Plaintiff's Complaint implicitly argues that the waiver and release clause in the Settlement Agreement is invalid due to Defendant's fraud in procuring the settlement. As explained below, Defendant did not commit any form of fraud by enforcing the OEA and Assignment through litigation and a subsequent Settlement Agreement. *See infra* Part II Section B.

Because the waiver and release clause is valid, it must be enforced as written. Throughout Plaintiff's Complaint, Plaintiff repetitively asserts that the OEA was ineffective "at all relevant times," including when Defendant commenced the Ohio lawsuit on January 14, 2022. ECF No. 14, PageID.83-84. (Pl.'s Compl. ¶¶ 49-53.) If Plaintiff wanted to challenge the effectiveness of the OEA to avoid the obligations it was knowingly assigned and assumed, Plaintiff had a full and fair opportunity to do so in the year the Ohio lawsuit was being litigated. Plaintiff failed to raise the validity of the OEA at this time, and Plaintiff subsequently waived and released Defendant of all claims. Plaintiff is now barred from any recovery in this case because all of Plaintiff's claims are premised on the OEA having supposedly ceased prior to Plaintiff acquiring ownership in Target's tract in 2021.

**B.     Plaintiff has failed to establish any claim for which relief can be granted due to Plaintiff's reliance on erroneous allegations.**

Even if this Court were to decide that Plaintiff was not barred from suing Defendant due to the express waiver and release contained in the Settlement Agreement, Plaintiff's Complaint still fails as a matter of law. Plaintiff contends that Defendant has committed fraud, statutory conversion, and received unjust enrichment as a result of the Ohio lawsuit, Settlement Agreement, and related transactions. Considering the well-pleaded and undisputed facts of this case, Plaintiff's causes of actions against Defendant should be dismissed for failure to state a claim due to Plaintiff's dependency on profoundly incorrect and unsupported allegations.

### i.   Plaintiff cannot establish any claims against Defendant on the basis Defendant misrepresented the effectiveness of the OEA because the OEA remains in full force and effect.

Plaintiff bases its claims upon its misguided and illogical interpretation of Article 5.1 of the OEA, resulting in the assumption that the "OEA has ceased … and was of no further legal force and effect." ECF No. 14, PageID.82 (Pl.'s Compl. ¶ 47.) According to Plaintiff, under Article 5.1(A) and (B), Developer's and Target's respective operating covenants had been terminated which somehow caused the termination of the entire OEA. These operating covenants were intended to ensure that the parties to the OEA each operated at a certain standard to mutually benefit one another for the first ten years of the OEA, separate from the remaining obligations of the OEA. ECF No. 14-1, PageID.163-168. (Pl.'s Compl. Ex. 3 at 27-

28.) The clear and unequivocal language of the OEA does not support Plaintiff's baseless conclusion that the termination or expiration of these individual operating covenants would impact the validity of the entire OEA. ECF No. 14-1, PageID.164-165, (Pl.'s Compl. Ex. 3 at 27-28. In fact, an examination of other OEA provisions reveals the intent of the parties of the OEA to be enforced for the full fifty (50) year term, regardless of the termination or expiration of the limited ten (10) year operating covenants in Article 5.1(A) and (B). Many provisions use the phrase "term of the OEA," and the fifty (50) year term of the OEA is precisely defined in Article 7.1. ECF No. 14-1, PageID.184-185. The following sections explicitly support this assertion:

- Article 2.1(B) is titled "Ingress and Egress" and states, "*During the term of this OEA* each Party hereby grants and conveys to each other Party for its use for the use of its Permitees, … a non-exclusive easement for the passage and parking of vehicles over and across the parking and driveway areas …." ECF No. 14-1, PageID.143.

- Article 3.2(F) is titled "Common Area" and states, "Developer and Target have approved the grading and drainage plan used in initial construction of the Common Area. *During the term of this OEA*, no Party shall alter the grade elevations on any portion of its Tract …." ECF No. 14-1, PageID.152.

- Article 3.3(B)(ii) is titled "Additional Construction on the Target Parcel" and states, "Target agrees that at all times *during the term of this OEA*, any additional improvements constructed on the Target Parcel will conform to the following limitations …." ECF No. 14-1, PageID.154.

- Article 4.2(C) is titled "Common Area" and states, "… Target shall pay to Developer an annual Common Area Maintenance charge ("CAM charge") equal to forty cents (40¢) per square foot of the Floor Area on the Target Parcel for each calendar year of *the term of the OEA* …." (emphasis added). ECF No. 14-1, PageID.158.

- Article 6.17 is titled "OEA Shall Continue Notwithstanding Breach" and states, "It is expressly agreed that no breach of this OEA shall (i) entitle any Party to cancel, rescind, or otherwise terminate this OEA …." ECF No. 14-1, PageID.183.

Article 6.17 most clearly reveals that all terms of the OEA are to remain enforceable for the full fifty (50) year term, regardless of any misconduct by the parties, and thus destroys the argument that the parties would also intend for a failure to comply with a single operating covenant to render the entire OEA unenforceable.

There are no other provisions under which the entire OEA could be unilaterally terminated or deemed ineffective. The earliest the entire OEA could be unilaterally terminated would be the year 2045. ECF No. 14-1, PageID.184-185.

(Pl.'s Compl. Ex. 3 at 47.) As set forth, the CAM charge provisions contained in Article 4.2 ECF No. 14-1, PageID.157-162, is still in full force and effect. Moreover, there is no separate clause that allows Plaintiff to be released from the obligation to pay CAM charges. ECF No. 14-1, PageID.158-159 (Pl.'s Compl. Ex. 3 at 21-22.) Pursuant to the OEA, Plaintiff is *at minimum* obligated to pay CAM charges for another two decades, since the end of the OEA term is the only occasion that will release Plaintiff from this obligation. ECF No. 14-1, PageID.159. (Pl.'s Compl. Ex. 3 at 22.) Since the OEA is still binding against Plaintiff, Defendant is entitled to seek enforcement of past and present due payments, and Plaintiff's bogus claims for fraud, statutory conversion, unjust enrichment, etc. fail as a matter of law as further explained below.

Count Two of Plaintiff's Complaint alleges Defendant committed fraud by misrepresentation. ECF No. 14, PageID.88-92. (Pl.'s Compl. ¶¶ 63-73.) There are six general elements a plaintiff must establish to prove fraud by misrepresentation: (1) the defendant made a representation of material fact, (2) that was false, (3) knowing the statement was false, or recklessly without knowledge of its truth, (4) with the intent for the plaintiff to rely on the material fact, (5) which the plaintiff did rely on, and (6) suffered injury as a result of the reliance. *U.S. Fidelity & Guaranty Co. v. Black*, 313 N.W.2d 77, 83 (Mich. 1981), quoting *Candler v. Heigho*, 175 N.W. 141, 143 (Mich. 1919). The failure to establish any one of the elements of fraud by

a "reasonable degree of certainty" will be "fatal to recovery." *Id.* In this case, Plaintiff cannot establish the second and third elements of fraud because Defendant did not knowingly make false statements of any material fact. As established herein, Defendant truthfully asserted that Defendant was entitled to relief under the OEA and Assignment, and therefore, was permitted to seek relief through judicial action and settlement.

Count Three of Plaintiff's Complaint alleges Defendant committed statutory conversion. ECF No. 14, PageID.92-93. (Pl.'s Compl. ¶¶ 74-77.) Statutory conversion allows parties to recover if they are damaged by "[a]nother person's stealing or embezzling property or converting property to the other person's own use." Mich. Comp. Laws § 600.2919a(1)(a). The plaintiff must show that the "defendant willfully engaged in a 'distinct act of domain wrongfully exerted over [the plaintiff'] personal property in denial of or inconsistent with the rights therein" for the defendant's own use. *Cnty. of Ingham v. Mich. Cnty. Rd. Comm'n Self-Insurance Pool*, No. 334077, 2022 Mich. App. LEXIS 4081, at *11-12 (Mich. Ct. App. July 14, 2022), quoting *Magley v. M&W Inc.*, 926 N.W.2d 1, 5-6 (Mich. Ct. App. 2018). When the alleged conversion is of money, the plaintiff must also prove that the money was obtained by defendant "without the owner's consent to the creation of a debtor-creditor relationship" and "had an obligation to return the

specific money ….” *Cnty. of Ingham*, 2022 Mich. App. LEXIS 4081, at *12, quoting *Lawsuit Fin, LLC v. Curry*, 683 N.W.2d 233, 240 (Mich. Ct. App. 2004).

Here, Plaintiff states Defendant converted the money by “the filing of a frivolous lawsuit devoid of arguable legal merit … in an effort to leverage a settlement agreement for which [Defendant] was not entitled to a legal recovery ….” ECF No. 14, PageID.93 (Pl.’s Compl. ¶ 76.) As proven in the preceding discussion, Defendant has an unambiguous contractual right to collect money from Plaintiff for CAM charges. Thus, Defendant did not statutorily convert money from Plaintiff because it was within Defendant’s legal rights to pursue judicial action in Ohio to enforce payment of delinquent CAM charges and secure said money through a Settlement Agreement.

Count Five of Plaintiff’s Complaint alleges that Defendant has been unjustly enriched. ECF No. 14, PageID.99. (Pl.’s Compl. ¶¶ 82-84.) When unjust enrichment exists, the law will imply a contract to prevent the unjust enrichment, unless an express contract already exists governing the subject matter. *Bellevue Ventures, Inc. v. Morang-Kelly Inv.*, 836 N.W.2d 898, 901 (Mich. Ct. App. 2013). Courts historically dismiss claims for unjust enrichment when an express contract exists. *Hudson v. Mathers*, 770 N.W.2d 883, 887 (Mich. Ct. App. 2009); *Liggett Rest. Group, Inc. v. City of Pontiac*, 676 N.W.2d 633, 639 (Mich. Ct. App. 2003). In this case, the OEA, ECF No. 14-1, PageID.135-213, the Assignment, ECF No. 14-1,

PageID.222-226, and Settlement Agreement ECF No. 14-1, PageID.237-246, are express contracts with Plaintiff that address the payment of CAM charges. The $138,501 that Plaintiff argues is unjustly enriching Defendant, is the exact amount the two parties expressly contracted to be paid. ECF No. 14-1, PageID.238. Plaintiff is not entitled to recovery under the theory of unjust enrichment due to the existence of multiple express contracts.

      **ii.**      **Plaintiff cannot establish any claims against Defendant with any remaining allegations due to irrelevance and inaccuracy.**

Aside from the improper assertion the OEA is ineffective, Plaintiff bases its claims on the allegation that Defendant incorrectly used the d.b.a. Quality Auto Parts to describe Plaintiff in the prior lawsuit. Many times throughout Plaintiff's numerous and rambling prayers to this Court, Plaintiff argues that this representation was used to fraudulently induce Plaintiff in some manner. The first element of fraud is that the assertion is *material* to the case at hand. *U.S. Fidelity & Guaranty Co. v. Black*, 313 N.W.2d 77, 83 (Mich. 1981). According to Black's Law Dictionary, a material fact is one that is "so substantial and important as to influence [the] party to whom [it is] made …." *Zine v. Chrysler Corp.*, 600 N.W.2d 384, 398 (Mich. Ct. App. 1999). Whether Plaintiff operated under the business name of Quality Auto Parts is not a material fact because the use of this d.b.a. would not have any reasonable influence on Plaintiff, especially since Plaintiff should know what its own d.b.a. is. In fact, Plaintiff continually used this d.b.a. in multiple court documents and even agreed to

the Settlement Agreement in which Plaintiff was referred to "Richmond Main, LLC, d.b.a. Quality Auto Parts." ECF No. 14-1, PageID.237.

Additionally, Plaintiff reasons that Defendant filed the lawsuit in Ohio "fraudulently misrepresenting personal jurisdiction over [Plaintiff] knowing full well that [Defendant] had no legal recourse … in Ohio …." ECF No. 14, PageID.83-84 (Pl.'s Compl. ¶ 51.) Yet, the Ohio Court expressly rejected Plaintiff's argument and concluded that Plaintiff transacted business in Ohio thereby subjecting itself to personal jurisdiction in Ohio. ECF No. 14-1, PageID.228-235. (Pl.'s Compl. Ex. 7.) As a result, Plaintiff has failed to establish the second and third elements of fraud concerning this representation of personal jurisdiction.

### C.   Plaintiff has failed to establish that it is entitled to any equitable remedies because there are no successful claims against Defendant for which relief can be granted.

Count One and Four of Plaintiff's Complaint allege that Plaintiff should receive various declaratory reliefs. ECF No. 14, PageID.84-96. (Pl.'s Compl. ¶¶ 55-62, 78-81.) An equitable remedy, such as declaratory relief, should only be granted when the underlying claims attempting to justify relief can be clearly substantiated. *Arabo v. Mich. Gaming Control Bd.*, 872 N.W.2d 223, 237 (Mich. Ct. App. 2015), citing *Wade v. Dep't of Corr.*, 483 N.W.2d 26, 28 (Mich. 1992). Here, Plaintiff requests for this Court, through declaratory relief, to find that Plaintiff should recover a variety of monetary damages as a result of Defendant's fraud, statutory

conversion, and unjust enrichment. ECF No. 14, PageID.84-85. (Pl.'s Compl. ¶¶ 55-62.) Plaintiff has failed to sufficiently establish the elements of fraud, statutory conversion, and unjust enrichment. *See supra* Part II Section A. Since these claims are the underlying purpose for Plaintiff's request for declaratory relief, Plaintiff has failed to establish it is entitled to such. Additionally, Plaintiff asserts, without any specific legal basis, that it is entitled to a "full and complete historical account of all income, expenses, improvements, and changes of any and [sic] nature concerning the subject matter," and Defendant's failure to do so constitutes fraud. ECF No. 14, PageID.96. Pl.'s Compl. ¶¶ 79-81. This is a purely contractual matter. Plaintiff's specific CAM obligation is outlined in the OEA, which does not provide Plaintiff with any right to the requested information. ECF No. 14-1, PageID.157-163. Therefore, Plaintiff is not entitled to any declaratory relief it seeks.

Count Six of Plaintiff's Complaint alleges that Plaintiff is entitled to quiet title in property.[3] ECF No. 14, PageID.101-105. (Pl.'s Compl. ¶¶ 85-91.) Under Michigan law, a plaintiff may bring a lawsuit for the equitable relief of quiet title against those who claim any inconsistent interest with the land in question. Mich. Comp. Laws § 600.2932(1). A plaintiff has the burden of proof to make out a prima facie case that it has title over the property, and if the plaintiff can successfully do

---

[3] Plaintiff alleges it complied with the requirements of Michigan Court Rule 3.114 to assert this claim. ECF No. 14, PageID.102. However, no such rule exists, so it is assumed that Plaintiff is relying upon Michigan Court Rule 3.411, titled "Civil Action to Determine Interests in Land."

so, then the defendant must prove it has superior interest itself. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Comm'n*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999). In this case, Plaintiff knowingly purchased the parcel from Target, ECF No. 14-1, PageID.215, subject to another party's interest because Plaintiff signed the Assignment, which assigned all of Target's obligations under the OEA to Plaintiff. ECF No. 14-1, PageID.222-226. Defendant has superior title under the OEA, which effectively grants Defendant an interest in the parcel. ECF No. 14-1, PageID.142-145. The OEA has been recorded with the Register of Deeds in Monroe County, Michigan, successfully providing other parties notice of Defendant's interest.  There are no grounds for which this easement is no longer effective nor has it been extinguished by other means.[4] Due to Defendant's superior title in the land in dispute, Plaintiff cannot be granted quiet title.

Count Seven of Plaintiff's Complaint alleges that Plaintiff is entitled to a constructive trust to enjoin liquidation or diminution of real property. ECF No. 14, PageID.105-106. A constructive trust is a remedy that allows a title holder to become a trustee of said title by operation of law when it is essential to prevent inequity. *Arndt v. Vos*, 268 N.W.2d 693, 695 (Mich. Ct. App. 1978). Such inequity can be

---

[4] Easements can be terminated or extinguished in a number of ways, such as merger of property, adverse possession, or abandonment. *See generally von Medling v. Strahl*, 30 N.W.2d 363; *Terlecki v. Stewart*, 754 N.W.2d 899; *Goodman v. Brenner*, 188 N.W. 377; 11 Midwest Transaction Guide § 371.25 (2024). None of these triggering events have occurred, nor does Plaintiff allege they have. The OEA is still in full force and effect.

through unjust enrichment, or when property is acquired through "fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances …." *Kammer Asphalt Paving Co. v. East China Twp. Sch.*, 504 N.W.2d 635, 641 (Mich. 1993). Here, Defendant has not been unjustly enriched in any manner, nor has Defendant engaged in any fraud throughout its dealings with Plaintiff. *Supra* Part II Section B(i). Plaintiff has failed to establish any grounds for which it is allowed the imposition of a constructive trust.

Count Eight of Plaintiff's Complaint ECF No. 14, PageID.109-111, alleges Plaintiff is entitled to equitable relief. However, equitable relief is not a separate cause of action or claim for relief that can be granted by the court. *Cannon v. Wells Fargo Bank, N.A.*, 917 F.Supp. 2d 1025, 1031 (N.D. Cal. 2013).

## III.    CONCLUSION

Plaintiff's Complaint is barred by the Settlement Agreement and Release the Parties entered into in January 2023 wherein Plaintiff expressly released Defendant from liability for any and all claims arising before the effective date of the Settlement Agreement and Release. The entirety of Plaintiff's Complaint is based upon items that allegedly occurred prior to January 2023. Plaintiff has waived its ability to bring this lawsuit and Defendant is entitled to judgment on all of Plaintiff's claims as a matter of law.

Even if Plaintiff were permitted to sue Defendant, Defendant has not engaged in fraud of any kind, statutorily converted money, or been unjustly enriched by pursuing enforcement of the OEA and Assignment through the Ohio lawsuit and Settlement Agreement. Plaintiff incorrectly relies on language in Article 5.1 of the OEA as having terminated the entire OEA, as opposed to the proper understanding that individual operating covenants in the OEA may be terminated. This OEA cannot be terminated for another twenty years, and thus clearly and undeniably still an enforceable and effective document, rendering the core of Plaintiff's arguments completely inadequate. Until the OEA term has been terminated, Defendant has the legal right to pursue payment of CAM charges and Plaintiff's performance of the maintenance and repairs detailed in the Settlement Agreement and the OEA. For the reasons outlined in this Brief in Support, this Court should rule in favor of Defendant and grant its Motion for Judgment on the Pleadings in its entirety.

Respectfully Submitted,

Dated: January 28, 2025

/s/     Philip A. Costello
Philip A. Costello (P36075)
Attorney for Defendant
111 S. Macomb Street
Monroe, Michigan 48161
(734) 241-8300
pacostello@brblaw.net

21

**CONFERENCE REGARDING CONCURRENCE**

I certify that on January 27, 2025, I spoke by telephone with Phillip A. Goldblatt,

Counsel for Plaintiff, explained this Motion, and inquired whether he would concur

with this Motion. He does not concur with this Motion for the reasons stated in the

Plaintiff's Complaint.


**CERTIFICATE OF SERVICE**

I certify that on January 28, 2025, this Motion for Judgment on the Pleadings and

accompanying Brief in Support was served upon Phillip A. Greenblatt, Attorney

for Plaintiff, at phil@phillipagreenblattpllc.com.

/s/     Philip A. Costello
Philip A. Costello (P36075)
Attorney for Defendant