UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHMOND MAIN, LLC,
A Michigan Limited Liability Company,

                                      Hon. Denise Page Hood

    Plaintiff

                                        Case No. 2:24-cv-12106

Vs.

FRENCHTOWN SQUARE PARTNERSHIP,
An Ohio General Partnership,

    Defendant.

_____/

| PHILLIP A. GREENBLATT, PLLC | Phillip A. Costello (P36075) |
|---|---|
| Phillip A. Greenblatt (P54170) | PHILIP A. COSTELLO, PLLC |
| Attorney for Plaintiff | Attorney for Defendant |
| P.O. Box 4270 | 111 S. Macomb Street |
| Southfield, MI 48037 | Monroe, MI 48161 |
| (248) 227-7350 | (734) 241-8300 |
| phil@phillipagreenblattpllc.com | pacostello@brblaw.net |

_____/

**Plaintiff's Response to
Defendant's Motion for Judgment on the Pleadings**

     Plaintiff moves this Honorable Court to deny Defendant's Fed. R. Civ. P.

12(c) Motion and all relief requested; alternatively, Plaintiff moves for leave to

amend its complaint to add a count for breach of contract.

Respectfully submitted,

Dated:  March 4, 2025                    /s/ Phillip A. Greenblatt (P54170)
                                         PHILLIP A. GREENBLATT, PLLC
                                         Phillip A. Greenblatt (P54170)
                                         Attorney for Plaintiff
                                         P.O. Box 4270
                                         Southfield, Michigan 48037
                                         (248) 227-7350
                                         phil@phillipagreenblattpllc.com

# Table of Contents

**Page**

Table of Contents……………….....................………………….......iii

Index of Authorities………………………….......................…..………iv

Brief in Support…………………………...............……………..1

Statement of the Issues Presented……...…………...........................……….........1

Controlling Authority for Relief Sought…………......................................……...2

Statement of Facts…………………………………............……...............2

Argument…………………………………………….............……………9

I.      Plaintiff is released from the terms of the Operating and
        Easement Agreement, and the Settlement Agreement was
        obtained by fraud and mutual mistake........................................12

II.     Richmond did not waive its current claims against Frenchtown.................20

Conclusion………................................................................................21

Certificate of Service……………………………………………………..22

## Index of Authorities

**Case** **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)..........9–10

*Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150 (6th Cir. 1992)...........................12

*Brown v. Cty. of Genesee*, 872 F.2d 169 (6th Cir. 1989).............................................2, 17

*Flamm v. Scherer*, 40 Mich. App. 1; 198 N.W.2d 702 (1972).....................................16

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).................2, 10

*Frenchtown Square Partnership v. Lemstone, Inc.,* 99 Ohio St. 3d 254
(Ohio 2003).......................................................................................................4–5

*Hammond v. United of Oakland*, 193 Mich. App. 146;
483 N.W.2d 652 (1992).......................................................................................4

*Herweyer v. Clark Hwy Services, Inc*, 455 Mich. 14; 564 N.W.2d 857 (1997)...........13

*Holtzlander v. Brownell*, 182 Mich. App. 716; 453 N.W.2d 295 (1990).................16

*In re Susser Estate*, 254 Mich App 232; 657 NW2d 147 (2002)..............................3

*Jackson v Wayne Circuit Judge*, 341 Mich 55; 67 NW2d 471 (1954)....................18

iv

**Case**                                                                 **Page**

*Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459;
663 N.W.2d 447 (2003)................................................................2, 13

*Michigan Twp Participating Plan v. Pavolich*, 232 Mich. App. 378;
591 N.W.2d 325 (1998)..................................................................12

*Moderwell v. Cuyahoga Cty.*, 997 F.3d 653 (6th Cir. 2021)................................10

*Rasheed v. Chrysler Corp.*, 445 Mich. 109; 517 N.W.2d 19 (1994)....................12

*Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545 (6th Cir. 2008)..........2, 9

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(c)..........................................................................9

Fed. R. Civ. P. 15(a)......................................................................2, 10

**Brief in Support of**
**Plaintiff's Response to**
**Defendant's Motion for Judgment on the Pleadings**

## Statement of the Issues Presented

I.    Plaintiff is released from the terms of the Operating and Easement
      Agreement, and the Settlement Agreement was obtained by fraud and
      mutual mistake.

II.   Richmond did not waive its current claims against Frenchtown.

## Controlling Authority for Relief Sought

The relief sought by Plaintiff in this Response is supported by *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008), *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 470-71, 663 N.W.2d 447, 454-55 (2003), *Brown v. Cty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989), *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), and Fed. R. Civ. P. 15(a).

## Statement of Facts

Defendant Frenchtown Square Partnership is the developer that owns and operates the Mall of Monroe. Frenchtown had entered into and recorded on August 4, 1994 in the Monroe County, Michigan, Register of Deeds Office an Operation and Easement Agreement ("OEA") between Dayton Hudson Corporation ("Target") and Frenchtown Square Partnership (OEA, ECF No. 14-1, PageID.135). Target was still in business at the inception of the Mall development. On or about February 1, 2015, Target went out of business and stopped occupying the property. (ECF No. 14-1, PageID.251-252).

Plaintiff Richmond Main, LLC, is a commercial auto parts seller. Richmond needed a location to serve as a "primary warehouse operation" to store its auto parts, and with the express blessing of Frenchtown on May 10, 2021, more than six years after Target went out of business in the Mall, Richmond assumed Target's

ownership interest in the Mall in a Bill of Sale (ECF No. 14-1, PageID.219), along with the recording of a Covenant Deed (ECF No. 14-1, PageID.215) and an Assignment and Assumption of Operation and Easement Agreement (Assignment, ECF No. 14-1, PageID.222).

Frenchtown drafted the OEA. Notably absent from the OEA is a choice of law provision, and it is silent on the issue of personal jurisdiction and venue. The OEA implicitly infers actions lodged in the situs of the county in which the Mall is located, and where all relevant register of deed recordings were filed. Nevertheless, Frenchtown sued Richmond in a prior action in an Ohio court instead of Michigan, where the Mall and Richmond are located and where venue would have been appropriate.

Richmond incurred significant attorney fees to defend itself in Ohio and eventually signed the Settlement Agreement unwillingly because of the coercive stress and financial hardship of defending an out of state case.

Under the OEA, Frenchtown is Richmond's agent and has the fiduciary responsibility of good faith and fair dealing to its principal Richmond. (OEA, ECF No. 14-1, PageID.172–173, Article V, 5.4(B)). The duty of an agent is "to act primarily for the benefit of" the principal. *In re Susser Estate*, 254 Mich App 232, 235; 657 NW2d 147 (2002) (citation omitted). An agent has "the duty not to compete with the principal on his own account or for another in matters relating to

3

the subject matter of the agency, and the duty to deal fairly with the principal in all transactions between them." *Id.* (citation omitted).

Frenchtown conducts itself in a fashion that is demonstrably a breach of its fiduciary responsibilities owed to Frenchtown and contrary to its agency relationship.

Frenchtown is imposing charges that are unreasonable and unjust, entitling Richmond to plead and argue for equitable or declaratory relief, and present a contract law action that Frenchtown is acting in bad faith. "[T]he covenant of good faith and fair dealing is an implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Hammond v. United of Oakland*, 193 Mich. App. 146, 152, 483 N.W.2d 652, 655 (1992) (citation omitted). It is indisputable that Richmond has shown that Frenchtown has breached the underlying contract itself.

Frenchtown has been in similar litigation involving its commercial contracts. In one of its cases the Ohio Supreme Court analyzed Frenchtown's case as follows:

> The duty to mitigate arises in all commercial leases of real property, just as it exists in all other contracts.
>
> *        *        *
>
> [L]andlords owe a duty to mitigate their damages caused by a breaching tenant. […] Accordingly, barring contrary contract provisions, a duty to mitigate damages applies to all leases.

* * *

We see no valid reason to exempt commercial leases from the duty to mitigate. A lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold. The lessor's efforts to mitigate must be reasonable and the reasonableness should be determined by the trial court. Failure to mitigate damages caused by a breach of a commercial lease is an affirmative defense.  [*Frenchtown Square Partnership v. Lemstone, Inc.,* 99 Ohio St. 3d 254, 259–260 (Ohio 2003).]

Frenchtown knew that it had a duty to mitigate in this case. Here, the OEA is not a commercial lease but like a commercial lease it is a commercial contract concerning the rights, duties, obligations, and covenants of interests in the Mall including that of Richmond that owns the Target Tract and building in the Mall in Michigan.

Frenchtown elected not to amend the OEA at the time of the assignment to include a choice of laws provision nor engage in a bargained for exchange to proactively mitigate damages by changing outdated and oppressive provisions of the OEA knowing that its failure to mitigate promised certain litigation evidenced by Frenchtown's civil litigation history.

Frenchtown's fraudulent motivation intended to shift its burden of expenses to Richmond as an offset with the wrongful imposition of excessive Insurance premiums, CAM charges, unnecessary and wasteful

parking lot replacement demands concerning the Target Tract, and all in light of the fact that Frenchtown's concealment of its duty to mitigate under the OEA commercial contract, the failure of a choice of laws provision within the OEA, and the OEA's prohibition of Richmond's ownership acquisition for the primary purpose of a warehouse not open to the public as a retail operation.

Also, under the OEA, by assignment, Frenchtown expressly states that it is Richmond's agent and that Frenchtown assumed an agent's fiduciary responsibility of good faith and fair dealing to Richmond under the OEA.

Yet, Frenchtown knew of and allowed the assignment between Target and Richmond to proceed for a prohibitive use contrary provision 5.1C(ii) under the OEA as a "primary warehouse operation." (ECF No. 14-1, PageID.165). Frenchtown elected not to amend the OEA in a "bargained for exchange" concerning outdated CAM charges and excessive Insurance premiums. That decision was made to bolster Frenchtown's claim alleging breach against its principal, Richmond, seeking to enforce cost-prohibitive covenants rather than exercising its duty to mitigate damages. Frenchtown could have allowed Richmond to perform in a substantially less cost-prohibitive fashion by honoring the CAM and Insurance aligned interests of

Frenchtown under the OEA with the selection by Richmond of CAM vendor(s) and an insurance carrier of Richmond's choice. The OEA requires that "[e]ach Party further agrees that its future construction activities shall not: cause any unreasonable increase is [sic] the cost of constructing improvements upon another Party's Tract . . . ." (OEA, ECF No. 14-1, PageID.149, Article II, 3.1(B)(i)).

The parties' prior case in Ohio was never decided on the merits because the parties entered a Settlement Agreement where Richmond paid Frenchtown $138,501.00, and Frenchtown acknowledges that Richmond's payment was "payment in full of all outstanding charges owed under the OEA through December 31, 2022" (ECF No. 14-1, PageID.238).

Richmond has directly and continuously carried and paid insurance premiums through the present under a policy satisfying the requirements of the OEA while simultaneously paying for duplicative and substantially more expensive insurance invoiced by Frenchtown through the 2023 calendar year.

Richmond continued to pay common area maintenance "CAM" charges under the OEA invoiced by Frenchtown through the date in which Richmond filed suit against Frenchtown on July 11, 2024 in the 38th Judicial Circuit County Court, Monroe, Michigan.

Richmond's Complaint is based on a number of theories seeking equitable and declaratory relief. However, by reason of the fact that Frenchtown insists on contract law as prevailing then leave to amend to file an amended complaint is requested.

The OEA states that, "Notwithstanding the foregoing, this operating covenant shall terminate as to Target at such time as Target permanently ceases to be open for business to the public." (OEA, ECF No. 14-1, PageID.163, Article V, 5.1(A).

The OEA also states that, "Target shall be released from its operating covenant as set forth above in the event that at any time following Target's initial opening for business less than seventy-five (75%) of the Mall Store Buildings shall be operating as mall stores. (OEA, ECF No. 14-1, PageID.164, Article V, 5.1(B)).

Frenchtown knew that the Mall's occupancy rate had been below seventy-five (75%) of the Mall Store Buildings for more than six (6) months while Richmond had occupied the property.

Frenchtown has known that Richmond has been using the property vacated by Target for a non-commercial purpose—storing auto parts—which means that Richmond does not have any customer invitees at the property. Richmond has maintained its common areas in compliance with its business.

The assignment between Richmond and Target provides that Richmond accepts any "defenses stemming from or related to the OEA . . . ." (Assignment, ECF No. 14-1, PageID.222).

The Settlement Agreement is ambiguous because it refers to Richmond's payments under the OEA; however, the OEA no longer applies to Richmond since Target ceased doing business with Frenchtown. (Settlement Agreement, ECF No. 14-1, PageID.238, ¶ 3).

## Argument

### Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).

"A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Moderwell v. Cuyahoga Cty.*, 997 F.3d 653, 659 (6th Cir. 2021) (citation omitted).

**Leave to Amend the Complaint**

Under Fed. R. Civ. P. 15(a), leave to amend is "freely" granted "when justice so requires." The United States Supreme Court has advised that a plaintiff should be allowed the opportunity to test a claim on the merits if the facts and circumstances underlying the claim suggest that it may be a proper subject of relief. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

The Supreme Court, in *Foman*, held that courts may not deny an amendment request without explaining its reasoning for doing so, and clarified the grounds that could justify denial of such a request:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires" . . . . In the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave should, as the rule requires, be "freely given." . . . outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion. [*Id.* at 182.]

10

Essentially as a condition precedent to reaching the Plaintiff's theories of recovery set forth in the Plaintiff's Complaint, Defendant's Brief expressly frames the condition as an issue lodged in contract law stating, "This Court must now decide whether Plaintiff is 'contractually' barred from further litigating this action. (ECF No. 15, PageID.281).

Therefore, the Plaintiff must be freely allowed to amend the pleadings to add a contract claim so that the numerous issues arising out of contract law including rules of construction, ambiguity, and interpretation may be fully addressed as the starting point upon which the Plaintiff's equitable, declaratory, and statutory claims accrued. All of which are material in nature and create genuine issues of material fact essentially conceded by the Defendant as articulated on the four corners of a reading of the Defendant's Facts and, Law and Analysis Sections (Def's Brief, ECF No. 15, PageID.284-285). (**See Exhibit 3 - Plaintiff's proposed First Amended Complaint**.)

Plaintiff's counsel sought concurrence from Defendant to amend the Complaint but has not received a response by the time of filing.

I.      **Plaintiff is released from the terms of the Operating and Easement Agreement, and the Settlement Agreement was obtained by fraud and mutual mistake**.

"Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Therefore, "whether a settlement agreement is a valid contract between the parties is determined by reference to state substantive law governing contracts generally." *Id.*

"The primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n. 28; 517 N.W.2d 19 (1994) (citations omitted). The terms of a contract should not be read in isolation; instead, the agreement is read as a whole in order to determine the intent of the parties. *Michigan Twp Participating Plan v. Pavolich*, 232 Mich. App. 378, 383; 591 N.W.2d 325 (1998) (citation omitted).

Here, the OEA states that, "Notwithstanding the foregoing, this operating covenant shall terminate as to Target at such time as Target permanently ceases to be open for business to the public." (OEA, ECF No. 14-1, PageID.163, Article V, 5.1(A)).

Richmond obtained Target's lease with the knowledge that Target ceased being open for business for six years by 2021. Richmond understood that Target

was no longer liable for the OEA expenses and accepted the lease under those terms.

At best, this language in the contract is ambiguous, which means the rule of *contra proferentem* applies. Ambiguous language in a contract is to be construed against the drafter. *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 470-71, 663 N.W.2d 447, 454-55 (2003) (citing *Herweyer v. Clark Hwy Services, Inc*, 455 Mich. 14, 22; 564 N.W.2d 857 (1997). The Settlement Agreement did not revive the operating covenant and impose a new clause and obligation upon Richmond. The language in the contract applies to Target, specifically, and it defines the facts that would cause it to terminate, which occurred when Target ceased operating. There is nothing in the contract language that says the same clause would apply to Target's successor, Richmond.

Also, the OEA states that "Target shall be released from its operating covenant as set forth above in the event that at any time following Target's initial opening for business less than seventy-five percent (75%) of the Mall Store Buildings shall be operating as mall stores. (OEA, ECF No. 14-1, PageID.164, Article V, 5.1(B)).

Frenchtown has not performed its obligation to provide that seventy-five percent of the Mall Store Buildings would be operating as mall stores. That means, Richmond is released from the operating covenant; it does not have to pay the

OEA charges since Frenchtown's current breach releases Richmond from the operating covenant.

Frenchtown also initially breached the contract by allowing Richmond to assume Targets interest, even though Richmond's use of the property was excluded by the contract. (OEA, ECF No. 14-1, PageID.164-167, Article V, 5.1(C)). Richmond uses the property as a warehouse for auto parts, and that is not an authorized use under the OEA. Frenchtown allowed that breach because it wanted to offset its overhead costs by dragging Richmond into its OEA charges.

Additionally, the OEA includes several provisions regarding CAM and Insurance that provide a basis for declaratory and equitable relief on a number of bases set forth in Richmond's pleading or by way of amendment.

For instance, Section 5.4(B) states that the "Developer is hereby designated the agent of the Covered Parties for the purpose of obtaining such insurance, provided that the approval of target as to the insurer, terms and cost, shall first be obtained, Target having theretofore been furnished an analysis of such cost." (OEA, ECF No. 14-1, PageID.172, Article V, 5.4(B)).

Also, Section 4.2(C)(i) states a requirement for the developer, Frenchtown, to "Make minor repairs to all drives and parking areas to keep the same in a smooth and evenly covered condition (any replacement or resurfacing shall only be performed at the request of Target by Developer, at Target's expense, which is not

included in the above CAM charge) . . . ." (OEA, ECF No. 14-1, PageID.159,

Article IV, 4.2(c)(i)).

Section 4.2(B)(i) states a requirement to for the developer, Frenchtown, to

"Maintain, repair and resurface all drive and parking areas to keep the same in a

smooth and evenly covered condition, and sweep and clean the same, as needed,

and restripe and patch said area as necessary, but not less often than every second

year." (OEA, ECF No. 14-1, PageID.158, Article IV, 4.2(B)(i)).

Section 4.2(B)(vi) states a requirement to for the developer, Frenchtown, to

"Clean, sweep, maintain, and repair all sidewalks and curbs." (OEA, ECF No. 14-

1, PageID.158, Article IV, 4.2(B)(iv)).

Additionally, the Settlement Agreement includes provisions regarding CAM

that provides the basis for declaratory and equitable relief on a number of bases set

forth in Richmond's pleading or by way of amendment.

The Settlement Agreement states a requirement for the developer,

Frenchtown, to "Repair the concrete curbs on the islands in front of the Target

Tract building" (ECF No. 14-1, PageID.239, 5(a)). And it states a requirement for

the developer, Frenchtown, to "Mill down, remove and replace the asphalt if the

Target Tract parking areas and cruise lanes only in areas that require replacement,"

and proceeds to state that "The parties agree to make all such determinations in

15

good faith" (ECF No. 14-1, PageID.239, 5(b)), which is contrary to the conduct of Frenchtown's treatment of Richmond under the OEA.

Frenchtown acted in bad faith because Richmond never requested a replacement for the parking lot, but Frenchtown demands it despite the fact that Richmond's Target Tract parking lot is in excellent condition compared to the remainder of Frenchtown's lot which has numerous of visible potholes. (Exhibit 1 - Pictures of Frenchtown's parking lots prior to the claim, and Exhibit - 2 Pictures of Richmond's parking lots on 1/30/2025). Frenchtown's unreasonable demand to replace the entire parking lot is made in bad faith because it causes waste and oppression. Frenchtown knows replacing the parking lot is expensive and elected only to maintain and repair their parking lot Tract because they know it is cheaper than replacement, and on the other hand, demanded replacement by Richmond of the Target Tract parking lot.

"The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Flamm v. Scherer*, 40 Mich. App. 1, 8-9; 198 N.W.2d 702 (1972). The rule applies to a substantial breach. *Id.* To determine whether a substantial breach occurred, a trial court considers "whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Holtzlander v. Brownell*, 182 Mich. App. 716, 722; 453 N.W.2d 295, (1990) (citation omitted).

Here, Richmond did not receive the benefit of its bargain. That is, Frenchtown is now charging insurance and maintenance fees that Richmond understood were no longer applicable after Target ceased operating and because Frenchtown failed to provide that seventy-five percent of the Mall Store Buildings would be operating as mall stores.

Richmond argues alternatively that it should not be bound by the Settlement Agreement because of Frenchtown's fraudulent acts and a mutual mistake in applying the OEA to Richmond after its termination as applied to Target.

"[T]he existence of fraud or mutual mistake can justify reopening an otherwise valid settlement agreement." *Brown v. Cty. of Genesee*, 872 F.2d 169, 174 (6th Cir. 1989). "One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Id.* (citations omitted).

Here, Frenchtown sued Richmond in an Ohio state court that did not have jurisdiction over Richmond, a Michigan resident operating its business in Frenchtown's Michigan property. Frenchtown's Ohio lawsuit was based on its fraudulent misrepresentation that Frenchtown was entitled to its theory of recovery and that Richmond was bound to the terms of the OEA.

Frenchtown allowed Richmond to assume Target's interests while knowing that Richmond was using the property as an auto parts warehouse, which was not an approved use under the OEA. (OEA, ECF No. 14-1, PageID.164-167, Article V, 5.1(C)). Frenchtown knew that Target had ceased operating for six years before Richmond assumed the lease. Upon information and belief, Frenchtown did not seek continued payments from Target under the OEA after Target ceased operating.

Frenchtown knew that its mall was operating at under seventy-five percent occupancy for over six months from the time Richmond assumed Target's interest and continuing through today. Frenchtown knew that it was in violation of the OEA, and that its breach terminated the operating covenant and released Richmond of its obligations. Nevertheless, the parties entered into the Settlement Agreement under fraudulent terms and the mutual mistake that Richmond was obligated to make payments under the OEA.

Additionally, the Settlement Agreement should be rescinded since Richmond has demonstrated that a party may obtain relief from the terms of a settlement agreement on a showing of "mistake, fraud, or unconscionable advantage taken by one party over the other." *Jackson v Wayne Circuit Judge*, 341 Mich 55, 60; 67 NW2d 471 (1954).

In this case, giving a most generous inference to Frenchtown, mutual mistake exists by both parties in failing to recognize that the Frenchtown developer had a duty to repair lots and not Richmond under the CAM provisions along with the fact that "replacement" of the parking lot pavement expressly required a request by Richmond under the OEA and not a demand by Frenchtown.

The reality is that in settlement discussions in the Ohio court, Frenchtown asserted that the parking lot was Richmond's responsibility when they either knew to the contrary or both parties were mistaken of the duties of the Frenchtown under the OEA. In other words, if Frenchtown knew that it was their obligation then they committed fraud in the inducement of Richmond to enter into the Settlement Agreement by failing to disclose the truth. In other words, Frenchtown had an unconscionable advantage in negotiations causing oppression in Richmond entering into the Settlement Agreement.

Similarly, the OEA is simply outdated and requires recission of its application or reformation based in part on the substantial reduction in the number of tenants in the Mall and the fact that the Target Tract is knowingly used for a prohibited use under the OEA that being primarily for a warehouse.

Also, it is excessively cost prohibitive to enforce a square foot

CAM formula that has risen from 40 cents to 87 cents per square foot under circumstances where Richmond can perform at a fraction of the cost utilizing vendors of its own selection rather than Frenchtown acting and good faith and fair-dealing, as was their duty under the OEA. Such acts violate and breach the duty as agent to Richmond, and fails in their duty to mitigate damages.

In other words, a change in circumstances of the properties, occupiers, pedestrian Mall traffic, market conditions and array of similar factors dictates justification to terminate, rescind, or reform the OEA accordingly.

## II.   Richmond did not waive its current claims against Frenchtown.

Finally, Frenchtown argues that Richmond has waived its claims against Frenchtown in the Settlement Agreement. (Def. Motion, ECF No. 15, PageID.293–294). However, the Settlement Agreement states that "Richmond Main hereby releases and forever discharges Frenchtown … from any and all claims … from the beginning of time to the effective date of this Agreement." (ECF No. 14-1, PageID.240, ¶ 9). Richmond did not waive its claims that accrued after the Settlement Agreement. Frenchtown is now demanding payments under the OEA that Richmond argues are unwarranted under the OEA and the Settlement Agreement. The Assignment between Target and Richmond also

provides that Richmond accepts any "defenses stemming from or related to the

OEA . . . ." (Assignment, ECF No. 14-1, PageID.222).

## Conclusion

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Deny Defendant's Motion for Judgment on the Pleadings in its entirety;

2. Declare that Richmond is not bound by the OEA, as its obligations
   terminated upon Target's closure in 2015.

3. Rescind the Settlement Agreement due to fraud and mutual mistake, and
   order Frenchtown to return the $138,501 payment Richmond made under
   false pretenses.

4. Alternatively, grant Richmond leave to amend its Complaint to assert
   breach of contract claims based on Frenchtown's failures to:

   a. Maintain common areas,

   b. Act as Richmond's agent in good faith and for Richmond's
      benefit,

   c. Charge reasonable fees, and

   d. Mitigate damages.

5. Award Richmond any further relief this Court deems just and equitable.

Respectfully submitted,

Dated: March 4, 2025          /s/ Phillip A. Greenblatt (P54170)
                                   PHILLIP A. GREENBLATT, PLLC
                                   Phillip A. Greenblatt (P54170)
                                   Attorney for Plaintiff
                                   P.O. Box 4270
                                   Southfield, Michigan 48037
                                   (248) 227-7350
                                   phil@phillipagreenblattpllc.com

## Certificate of Service

I certify that on March 4, 2025, the above Motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record.

/s/ Phillip A. Greenblatt (P54170)
PHILLIP A. GREENBLATT (P54170)
Attorney for Plaintiff